## TAYLOR v. LARCHMONT WATER CO.

(Supreme Court, Appellate Division, Second Department. July 24, 1903.)

1. WATER MAINS IN STREET—REMOVAL—EQUITABLE CONSIDERATION.
    In a suit to require a water company to remove its water main from an alleged private street it appeared that the pipes were laid in the street in order to remove a "dead end" opposite plaintiff's house and to secure a continuous circulation. The work was done at the expense of the company, with plaintiff's knowledge and acquiescence. *Held*, that a condition of affairs so created should not be disturbed to the prejudice of defendant, or without the clearest warrant of right on the part of plaintiff.

2. SAME—PROOF BY PLAINTIFF.
    The street, though never formally accepted by the town authorities, had been dedicated to the public use, and since 1857, when the owners filed a map laying out the street with lots abutting on it, it had been open to public use. In all conveyances of the lots, including the conveyance to plaintiff, the soil of the street had been excluded from the description of the property. Before the suit plaintiff had thus conveyed

his lot abutting on the street, and there was nothing to establish that at the time the suit was commenced he was the owner of any property either in the street or bordering on it. *Held,* that a judgment for plaintiff was erroneous for failure to show interest in the property.

Appeal from Trial Term, Westchester County.

Action by Thomas C. Taylor against the Larchmont Water Company. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, JENKS, and HOOKER, JJ.

H. T. Dykman, for appellant.

J. Addison Young, for respondent.

HIRSCHBERG, J. This action was commenced on October 23, 1900, its object being to compel the defendant, an incorporated water company, to take up a water main heretofore laid by it in Myrtle avenue, and in a continuation of such avenue known as "Myrtle Place," in the village of Larchmont, in the town of Mamaroneck. The trial court found that Myrtle Place was a private street, the freehold title to the bed of which was vested in the plaintiff, and required the removal of the main from that place; but, as the damage done the plaintiff might not be substantial, the judgment provided that the defendant should have 60 days' time in which to institute legal proceedings for the condemnation of a right to maintain the pipes in question in Myrtle Place.

While the evidence justifies the conclusion reached by the trial court that the street in question is private property, I think it is not sufficiently clear that the plaintiff is the owner; and under the circumstances disclosed as to the original laying of the pipe or main only the clearest evidence of right would justify a court of equity in requiring the defendant to incur the expense of removing what was unquestionably originally placed in the street at its expense, but for the sole benefit of the plaintiff. It appears that the defendant's pipes in 1899 were laid in Myrtle avenue, and also in a highway known as "Edgewood Avenue," the two avenues being connected by Myrtle Place. The plaintiff, having built at or near the junction of Edgewood avenue and Myrtle avenue, complained to the defendant of the quality of the water supplied to his house, and the defendant, in order to remedy the trouble, which is attributed to the "dead end" of the pipe, then opposite the plaintiff's house, laid the main in question in order to secure a continuous circulation. This was done at an expense of six or seven hundred dollars, and the evidence leaves little room for doubt that it was done with the plaintiff's knowledge and acquiescence. A difference between the parties, afterwards developed, has apparently given rise to the litigation, but equitable considerations would naturally dictate that a condition of affairs so created should not be lightly disturbed to the prejudice of the defendant, or without the clearest warrant of right on the part of the plaintiff.

There can be no question but that the street has been long dedicated to the public use, although never formally accepted or recognized by the town authorities, unless it be in the matter of the laying of this pipe, which would seem to have been located or placed to some extent

under the direction of the commissioner of highways. As early as the year 1857 the owners of the property filed a map in the office of the register of the county of Westchester, showing Myrtle Place as a street laid out with lots abutting on it, and from that time to the present it has been open to public use and travel. In every conveyance and transfer of the lots the soil of the street has been carefully excluded from the description of the property; the conveyances to and from the plaintiff, like all the others, being confined to the abutting lots, and not including any portion of the street. It further appears that before the commencement of this action the plaintiff had thus conveyed whatever property he possessed either to his wife or to other grantees, and there is nothing in the record tending to establish that at the time the action was commenced he was the owner of any property either in the street or bordering on it. He did, indeed, say that he "supposed" the property was owned by himself and his wife, and that she had given him a reconveyance, which he had not recorded. Such reconveyance was not produced, nor was any evidence given as to the scope or nature of the tenure created by it, nor anything to indicate that it preceded the commencement of the action. The plaintiff, having no interest in the subject-matter of the suit upon the record title, should have been required to disclose explicitly the grounds and nature of his claim to the relief which he has obtained by the judgment appealed from in view of the peculiar circumstances under which the trespass, if there be a trespass, was committed; and his failure so to do, wholly apart from any consideration of the defendant's rights in the premises, requires a new trial in the interests of justice and equity. The judgment should be reversed.

Judgment reversed, and new trial granted; costs to abide the final award of costs. All concur.